# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                     **Case No. 06-CR-336**

**MIGUEL VALDEZ**
    **Defendant.**

---

## SENTENCING MEMORANDUM

Defendant Miguel Valdez pleaded guilty to using a telephone to facilitate a felony drug offense, contrary to 21 U.S.C. § 843(b), and I set the case for sentencing. In sentencing defendant, I first calculated his guideline range, then imposed a sentence sufficient, but not greater than necessary, to satisfy the purposes of sentencing set forth in 18 U.S.C. § 3553(a). See, e.g., Gall v. United States, 128 S. Ct. 586, 596-97 (2007).

### I. GUIDELINES

The parties agreed to a drug weight of 25-50 grams of cocaine, which produced a base offense level of 14 under U.S.S.G. § 2D1.1(c). Based on his guilty plea and expression of remorse, the parties further agreed that defendant qualified for a 2 level reduction for acceptance of responsibility under § 3E1.1, for a final offense level of 12. Coupled with defendant's criminal history category of II, level 12 produces an imprisonment range of 12-18 months.

### II. SECTION 3553(a)

**A.**     **Sentencing Factors**

In imposing sentence, the district court must consider:

> (1) the nature and circumstances of the offense, and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed–
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the advisory guideline range;
>
> (5) any pertinent policy statements issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The court must, after considering these factors, impose a parsimonious sentence, that is, one "sufficient but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). The court must give respectful consideration to the guidelines in making this determination, Gall, 128 S. Ct. at 594, but it may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007), or place any "thumb on the scale" favoring a guideline term, United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). Rather, the court must make an individualized assessment based on all of the § 3553(a) factors, Gall, 128 S. Ct. at 596-97, keeping in mind that the parsimony provision represents the "overarching" command of the statute, Kimbrough v. United States, 128 S. Ct.

558, 570 (2007).

**B.    Analysis**

    **1.    The Offense**

In August 2005, the government began investigating a large-scale cocaine distribution organization in the Waukesha, Wisconsin area, headed by two men named Javier Aguilera and Gabriel Urbina. The government eventually obtained wiretaps for Aguilera and Urbina's phones, pursuant to which agents intercepted about eight drug-related calls between defendant and Urbina, and four between defendant and Aguilera. One of the calls revealed that defendant acted as a middleman between individuals looking to sell guns and Urbina, who had drugs to trade. The deal apparently fell through. Other calls pertained to small amounts of cocaine, and the parties agreed that defendant should be held responsible for 25 to 50 grams.

    **2.    The Defendant**

Defendant was thirty-one years old, with a limited prior record – marijuana possession in 2006, two retail thefts in 2008, and trespassing in 2008 – with all but one of these cases handled in municipal court. Although the record was minor, defendant did commit several of these offense while on pre-trial release in this case, which I considered an aggravating circumstance. Defendant violated other conditions of release, as well, including the prohibition on drug use, resulting in his revocation and detention.

Defendant was born in Mexico and came to the United States at age eleven with his family. He never became a citizen and thus faced deportation after completion of this sentence. He dropped out of school and compiled a rather uneven work record. He married in 1998, but divorced in 2002. The marriage produced a son, age ten, who lived with his

3

mother, and defendant's child support arrears totaled nearly $10,000. Defendant reported another child, age four, but that had not been formally adjudicated. The family members who responded to the PSR writer did make positive statements about defendant, as did his current girlfriend, who stated she would follow him to Mexico.

### 3. The Sentence

The guidelines called for 12-18 months in prison, and the government recommended a sentence of a year and a day, while defendant requested a time-served disposition or probation. I concluded that a prison term somewhat below the range would suffice to satisfy the purposes of sentencing. I found probation inappropriate given the likelihood of deportation and defendant's relatively poor performance on pre-trial release.

Defendant's attempt to arrange a trade of drugs for guns was serious, warranting a period of confinement to provide just punishment and deter others. However, that deal apparently never occurred, and defendant's overall involvement in the conspiracy was slight. He was not himself a dealer, but rather acted as a conduit for others. Therefore, I found a period of imprisonment below the range sufficient to satisfy these purpose of sentencing.

Given defendant's limited record, lengthy imprisonment was not needed to protect the public. Nor was a significant term needed to deter him, given the fact that he had never before done time. I did want to acknowledge, though, defendant's poor performance on pre-trial release, which made a time-served disposition insufficient.

Defendant compared himself to the other defendants in this case who pleaded guilty to phone counts, but the comparisons were not entirely apt. Kayla Lapp, whom I placed on probation, only allowed Aguilera to store cocaine at her residence; she was not involved in any actual trafficking or trading. She also seemed to be doing better in the year prior to sentencing,

4

Case 2:06-cr-00336-LA     Filed 05/01/09     Page 4 of 6     Document 713

unlike defendant Valdez, who had his bond revoked. Jeffrey Wingert was primarily a cocaine user who got caught up in the wiretaps, and he made serious efforts to get his substance abuse under control as the case was pending; I therefore found that he deserved a chance on probation. Sean Kruschke was also primarily a user, who made serious efforts to turn his life around. I sentenced him to a split sentence of 5 months prison and 5 months home confinement. I found that defendant Valdez should receive slightly more prison time (but – as explained later – with no supervision or home detention to follow).

      Defendant also asked me to consider the fact that he had lived in the United States, legally, since age eleven, but now faced deportation. I did not doubt that this would pose a hardship; most of his family lived in the United States. Ultimately, though, he had only himself to blame for this consequence – he involved himself with drugs and never took the steps needed for naturalization. Defendant cited <u>United States v. Martinez-Alvarez</u>, 256 F. Supp. 2d 917 (E.D. Wis. 2003), in which I granted a departure based on "cultural assimilation," but that was an unlawful re-entry case where such assimilation helped explain the defendant's motive for coming back to the United States. <u>Martinez-Alvarez</u> was not really relevant here. More relevant were cases like <u>United States v. Ferreria</u>, 239 F. Supp. 2d 849 (E.D. Wis. 2002) and <u>United States v. Villanueva</u>, No. 07-CR-149, 2007 WL 4410378 (E.D. Wis. Dec. 14, 2007), addressing the hardship of deportation. But under the circumstances here, where defendant indicated that if removed to Mexico he could farm with his cousins, and given his girlfriend's statement that she would follow him, I gave this factor limited weight. Finally, defendant asked me to consider the fact that he faced a period of administrative detention while awaiting removal, which I took into account.

5

## III.  CONCLUSION

Under all the circumstances, I found a sentence of 6 months sufficient but not greater than necessary to satisfy the purposes of sentencing.  I therefore committed defendant to the custody of the Bureau of Prisons for 6 months.  This sentence varied modestly from the guidelines, and because it was supported by the particular facts discussed above it created no unwarranted disparity.  Given the likely deportation, which would make defendant unavailable for supervision, and because the statute did not require it, I imposed no supervised release in this case.  See also U.S.S.G. § 5D1.1(b) (making supervision discretionary when the prison term is less than 1 year).

Dated at Milwaukee, Wisconsin, this 1st day of May, 2009.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

6

Case 2:06-cr-00336-LA   Filed 05/01/09   Page 6 of 6   Document 713